UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY MARVELL SEMIEN,

      Plaintiff,

    v.

CLAY SPEAKER

      Defendant.

Case No. 12-0316 JST (PR)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING MOTION FOR SUMMARY JUDGMENT AS MOOT**

ECF No. 11

Plaintiff Anthony Marvell Semien, a California prisoner incarcerated at Pelican Bay State Prison (PBSP), has filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights by Officer Clay Speaker, a correctional officer at PBSP.[1]  On August 7, 2012, the Court issued an Order of Service, finding that Plaintiff's allegations stated a cognizable claim against Officer Speaker for the unlawful use of excessive force, in violation of the Eighth Amendment.  ECF No. 4.  On November 21, 2012, Defendant filed a motion to dismiss and for summary judgment.  ECF No. 11.  Plaintiff has filed oppositions.  ECF Nos. 23 (qualified immunity), 24 (exhaustion).  Defendant has filed a reply.  ECF No. 28.  The Court has issued an Order Granting Defendant's Motion to Stay Discovery Pending the Adjudication of His Motion and Denying Plaintiff's Motion to Stay Summary Judgment Pending Discovery.  ECF No. 38.  For the reasons discussed below, the Court GRANTS Defendant's motion to dismiss and DENIES his motion for summary judgment as moot and grants his request for judicial notice (RJN).

## I.  BACKGROUND

In 2006, Plaintiff was sentenced to a total term of seventy-five years to life with the possibility of parole after eighty-seven years have been served.  RJN, Ex. B, Abstract of Judgment in Plaintiff's underlying criminal case.

---

[1] Plaintiff's complaint incorrectly named Defendant as Cory Speaker.

Plaintiff's excessive force claim addresses an incident that occurred at PBSP on March 24, 2011. The facts are disputed by the parties; first Defendant's, then Plaintiff's version of events are summarized as follows.

**A.     Defendant's Evidence**

According to Defendant, on the morning of March 24, 2011, several officers, including Defendant, were passing out meal trays in Building A-2, section C, where Plaintiff was housed. Garske Dec., Ex. L, PBSP Crime/Incident Report (Lt. Kelly's Summary of Incident). Officers Coleman and Gardner were on the first-floor tier; Defendant and Officer Risenhoover were on the second floor tier. Id. At approximately 6:15 a.m., while Officer Gardner was delivering breakfast trays, Plaintiff, through the open food port in his cell door, threw his cup at Officer Gardner, almost hitting him. Id. Defendant and Officer Risenhoover did not see Plaintiff throw the cup, but saw the cup flying across the section dayroom floor. Id. Officer Gardner informed Sergeant Biberston about the incident. Id. Sgt. Biberston ordered Plaintiff to be rehoused in a cell with a modified food port. Id. At approximately 6:40 a.m., Officers Risenhoover, Coleman and Defendant escorted Plaintiff from his cell to the unit's rotunda holding cells until he could be rehoused in a cell with a modified food port. Id.

Officers Risenhoover, Coleman and Defendant gathered all of Plaintiff's property from his cell and placed it on a cart in the rotunda. Garske Dec., Ex. L. at 17 (Officer Coleman's Report of the Incident). Defendant threw garbage from Plaintiff's cell into a garbage can. Id. Plaintiff wanted to look at the items Defendant had thrown away to confirm that they were not legal paperwork. Id. Defendant showed the items to Plaintiff, who agreed that the items were garbage. Id.

At about 7:32 a.m., Defendant and Officers Coleman and Risenhoover began to escort Plaintiff from the holding cell to his new cell with the modified food port. Garske Dec., Ex. L at 2 (Lt. Kelly Summary). While still in the rotunda, Plaintiff kicked Officer Coleman on both of her knees, injuring her knees and elbow. Id.; Ex. H (Injury Report of Officer Coleman). Defendant and Officers Risenhoover and Coleman used physical force to push and shove Plaintiff to a face

2

down position on the rotunda floor.  Garske Dec. Ex. L (Lt. Kelly Summary).  When Plaintiff was lying on the ground, Officer Coleman was kneeling on top of him with her right knee on his right shoulder and her left knee across his back at his waistline, Defendant was lying with his upper body across Plaintiff's upper back and Officer Risenhoover was lying with his upper body across Plaintiff's legs, holding them down.  Garske Dec., Ex. L (Coleman Report).  An alarm was activated; Sgts. D. Findlay and Biberston, and Officers F. Gardner, D. McGuirt and K. Trim responded.  Id. (Lt. Kelley Summary).  Moments later, Lt. G.A. Kelley and Registered Nurse P. Exline responded.  Id.  R.N. Exline examined Plaintiff and saw no injuries.  Id.; Ex. I (Injury Report of Plaintiff ).

Officer Trim retrieved a set of leg irons, a security triangle, and a spit hood from the control booth and secured the leg irons around Plaintiff's ankles.  Garske Dec., Ex. L (Coleman Report).  Defendant placed the spit hood onto Plaintiff's head and face.  Id.  Plaintiff continued to resist the officers' combined force the entire time he was on the floor, pushing away from the floor and attempting to twist his body, until the leg irons and spit hood were applied.  Id.  Once Plaintiff was secured in leg irons and spit hood, Defendant and Officers Risenhoover and Coleman assisted him to his fee and placed him face first on the wall next to the Section A door.  Id.  Plaintiff again became resistant, attempting to push away from the wall.  Id.

Lt. Kelley and Sgt. Biberston accompanied the escort team into the section A housing unit to Plaintiff's new cell.  Id. (Lt. Kelley Summary).  In the new cell, Officer Trim placed the handcuff restraint triangle on the handcuff chain attached to Plaintiff's wrists.  Id.  Plaintiff knelt down at the opening of his cell and staff attempted to remove his leg restraints, but Plaintiff became resistive to their removal and said that he was going to continue to resist.  Id.  Lt. Kelley ordered that the officers stop removing the leg irons and for Plaintiff to be escorted back to the holding cell for a cool down period and psychiatric evaluation.  Id.

Defendant and Officers Risenhoover and Gardner escorted Plaintiff out of the section A living area and into the rotunda area.  Id.  When they entered the rotunda area, Plaintiff kicked Officer Gardner in the area of his left ankle.  Id.  Defendant and Officers Risenhoover and Gardner

United States District Court
Northern District of California

1    again used physical force to pull and shove Plaintiff to the rotunda floor to gain control of his

2    resistance.  Id.  At approximately 7:42 a.m., R.N. Exline again responded and medically evaluated

3    Plaintiff, noting an abrasion under Plaintiff's chin.  Id.; Ex. K (Injury Report of Plaintiff).  R.N.

4    Exline was not able to clean Plaintiff's injured chin because he would not allow her to do so.  Id.,

5    Ex. W (Exline Progress Notes).

6         Plaintiff was secured in the holding cell without further resistance or use of force.  Id., Ex.

7    L (Lt. Kelley Summary).  Psychiatric staff examined Plaintiff and concluded that he had no

8    treatable mental illness.  Id.; Ex. U (Mental Health Interdisciplinary Progress Note).

9         At about 9:30 a.m., under the supervision of Lt. Kelley and Sgt. Biberston, Defendant and

10   Officers Risenhoover, Gardner and McGuirt removed Plaintiff from the rotunda holding cell,

11   placed him face down in a Stokes litter, and carried him to his cell.  Id., Ex. L (Lt. Kelley

12   Summary).  Plaintiff was laid on the floor in front of the cell and slid into the cell by Lt. Kelly,

13   who accomplished this by pulling on Plaintiff's jumpsuit.  Id.  Lt. Kelley and Defendant

14   maintained physical control of Plaintiff's wrists as Officer Risenhoover removed the restraints and

15   Officer McGuirt tied Plaintiff's ankles and wrists together with a sheet (soft restraint).  Id.  Staff

16   exited the cell and Plaintiff removed the soft restraints and surrendered the sheets.  Id.  Plaintiff

17   did not resist this escort or the application of soft restraints.  Id.

18        Plaintiff was given a rules violation report (RVR) for battery on a peace officer for

19   assaulting Officers Coleman and Gardner.  Garske Dec., Ex. E (RVR).  At the rules violation

20   hearing, Plaintiff stated in his defense, "No statement.  I shouldn't have done it," and pleaded

21   guilty.  Id.  The hearing committee accepted Plaintiff's guilty plea and sentenced him to 150 days

22   forfeiture of good time credits.

23        On April 4, 2011, Plaintiff submitted an inmate grievance, log number PBSP S11-00987,

24   alleging that, on March 24, 2011, Officers Gardner and Coleman assaulted him and Defendant

25   threw away some of his personal property.  Garske Dec., Ex. M (Plaintiff's April 4, 2011

26   Grievance Log No. PBSP S11-00987).  In this grievance, Plaintiff alleged that, on the morning of

27   March 24, 2011, he saw Officer Gardner spit in Plaintiff's food and Plaintiff demanded to speak

28

United States District Court
Northern District of California

4

1   with a sergeant.  Id.  Instead, Plaintiff was taken out of his cell, placed in a holding cage and told

2   that he was to be placed in a modified cell.  Id.  Officer Gardner was holding Plaintiff's left arm

3   and Officer Coleman was holding Plaintiff's right arm as he was being escorted to the modified

4   cell.  Id.  Without any provocation, Officer Gardner kicked Plaintiff's lower left leg causing

5   Plaintiff to stumble and then both Officer Gardner and Coleman slammed Plaintiff face first onto

6   the ground, even though Plaintiff's hands were cuffed behind his back.  Id.  Plaintiff's chin was

7   cut, causing it to bleed profusely.  Id.  Plaintiff was then placed back in the holding cage for over

8   six hours in handcuff restraints and, during that time, Defendant threw away Plaintiff's personal

9   letters and legal mail  Id.  On his grievance form, Plaintiff wrote that, although his grievance

10  included his claim against Defendant, he only intended to file a civil rights complaint for cruel and

11  unusual punishment against Officers Gardner and Coleman; he did not intend to file a civil rights

12  complaint against Defendant.  Id.

13        Plaintiff's grievance was bypassed at the first level of review.  Id.  At the second level of

14  review, the grievance was partially granted and an inquiry was conducted into Plaintiff's

15  allegations.  Garske Dec., Ex. N (Second Level Review of Plaintiff's Grievance).  After the

16  inquiry and investigation was completed, it was determined that staff did not violate California

17  Department of Corrections and Rehabilitation (CDCR) policy.  Id.  The third level appeal decision

18  summarized Plaintiff's allegations that Officers Coleman and Gardner inflicted excessive force on

19  Plaintiff and Defendant threw away Plaintiff's legal mail.  Garske Dec., Ex. O (August 25, 2011

20  Third Level Decision).  It also summarized the second level decision.  Id.  In denying the appeal,

21  the third level reviewer stated, "On July 8, 2011, the examiner reviewed the confidential report

22  related to this appeal and determined that staff did not violate policy as alleged."  Id.

23        **B.      Plaintiff's Evidence**

24        In his verified complaint, Plaintiff states that, on March 24, 2011, he was being transported

25  to another cell by Defendant and another officer.  Comp. at 3.  Defendant was verbally abusing

26  and harassing Plaintiff.  Id.  Plaintiff was handcuffed behind his back.  Id.  As they entered Section

27  A, Defendant purposefully kicked Plaintiff's left lower leg and then slammed Plaintiff face first

28

onto the concrete ground, causing a cut to Plaintiff's chin.  Id.  At no time before or after this action did Plaintiff resist.  Id.

With his opposition to Defendant's motion, Plaintiff submits the declarations of five inmate-witnesses who state that they saw Defendant kick Plaintiff and then Defendant and Officer Coleman slammed Plaintiff to the ground, causing his chin to bleed.  See Plaintiff's Exs. A-E., Declarations of Toraino Young, Eric Williams, George Angell Laguer, Timothy Allen and Francisco Urrea Gonzales.

In regard to his grievance, Plaintiff indicates that, although his first level grievance named Officers Gardner and Coleman as the officers who committed excessive force, he later discovered that he made a mistake in naming Officer Gardner instead of Defendant as the officer who held his left arm and kicked his leg.  Exhaustion Opp. at 5.  Plaintiff states that, immediately after learning this, he submitted an Inmate Request, Form number CDC GA-22, to the person assigned to his third level appeal, Mr. Townsend, requesting permission for Plaintiff to make this correction on his appeal.  Id. Ex. J.  Plaintiff's Exhibit J is a form entitled, "Inmate Request for Interview," filled out by Plaintiff on April 20, 2011, on which Plaintiff wrote, "Greetings!  Mr. Townsend on March 24th 2011 there was an issue of excessive force upon me by a Correctional Officer Speaker.  I filed my 602 appeal on April 4th 2011, however, I put down the name of Officer Gardner.  This is incorrect.  The officer's name is Speaker.  Can I correct this?  C.O. Gardner threw away my property."  Plaintiff's Ex. J.  The bottom of the form has a box filled in indicating that Mr. Townsend interviewed Plaintiff on April 24, 2011.  Id.  The box labeled, "disposition," contains the sentence, "Mr. Semien I will send your appeal back to you so you can modify the name deleting C.O. Gardner and add C.O. Speaker."  Id.  Plaintiff's Exhibit H1-3 is the same grievance submitted by Defendant, but has the name Gardner crossed out and the name Speaker written in over the cross-out of Gardner's name.  Plaintiff's Exhibit H1-3.

## C.    Defendant's Reply Evidence

With his reply, Defendant submits several declarations to place the credibility of Plaintiff's evidence at issue.  J.D. Lozano, CDCR Chief of the Office of Appeals (OOA), states that he has

been employed by the CDCR since 1997in various capacities.  Lozano Dec. at ¶¶ 1, 2.  Mr.

Lozano states the following about the administrative procedures of the OOA.  The OOA keeps an

electronic record of each non-medical inmate appeal that has proceeded through the final level of

review.  Id. at ¶ 3.  When an appeal is received by the OOA and is accepted for review, it is given

an appeal number and logged into the electronic system.  Id.  Each appeal record contains the

appeal log number, the category or nature of the appeal, the institutional log number, the inmate's

name and CDCR number, the institution from which the appeal arises, the date the appeal is

received, the date the appeal is closed and the final disposition of the appeal.  Id.

       A search of the OOA records was conducted for references to Plaintiff's appeal of the

March 24, 2011 incident, log number PBSP-S11-00987.  Id. at ¶ 7.  The only documents found,

which are attached as Exhibits A and B to Mr. Lozano's declaration, are the documents submitted

with Defendant's motion to dismiss.  Id. at ¶¶ 7, 8, Exs. A, B.

       S. Soderlund, Litigation Coordinator at PBSP, has worked in this capacity since 2012 and

has worked for the CDCR for approximately eleven years.  Soderlund Dec. at

¶ 1.  As the PBSP Litigation Coordinator, Mr. Soderlund coordinates all legal matter for the

inmates and is authorized to access records maintained on inmates at PBSP.  Id. at

¶¶ 2, 3.  At the request of the Attorney General, Mr. Soderlund reviewed Plaintiff's Exhibits H and

J.  Id. at ¶ 5.  Mr. Soderlund reviewed Plaintiff's file and was not able to locate Plaintiff's Exhibits

H and J; he did locate the documents depicted in Defendant's Exhibit M, Plaintiff's original

unaltered grievance.  Id.

       M. Townsend has been employed by the CDCR for approximately seventeen years and has

worked as a Correctional Counselor II at PBSP for over two years.  Townsend Dec. at ¶ 1.  In this

capacity, Mr. Townsend works in the Appeals Department at PBSP and is familiar with CDCR's

policies and procedures for maintaining inmate appeal records at PBSP.  Id. at ¶ 2.  Mr.

Townsend's duties include, but are not limited to, receiving, reviewing and responding to inmate

grievances and staff complaints submitted by inmates.  Id.  At the request of the Attorney

General's Office, Mr. Townsend reviewed the documents submitted by Plaintiff with his

United States District Court
Northern District of California

7

opposition, designated as Exhibits H and J.  Id. at ¶ 3.  Mr. Townsend reviewed the file pertaining to Plaintiff's grievance log number PBSP-S-11-00987 and could not find the documents depicted in Exhibits H and J.  Id.  Mr. Townsend did find the documents depicted in Exhibit M, submitted by Defendant in support of his motion.  Id.  Mr. Townsend also reviewed the document designated as Plaintiff's Exhibit J.  Mr. Townsend states that he has never seen this document before, he did not receive it from Plaintiff in April 2011, he did not respond to it and none of the handwriting in it is his handwriting.  Id. at ¶ 4.

## II.       DISCUSSION

### A.       Motion to Dismiss

Defendant argues that Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies and because it is barred by the favorable-termination requirement.

#### 1.       Exhaustion of administrative remedies

##### a.       legal standard

The Prison Litigation Reform Act of 1995 ("PLRA"), amended 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Although previously within the discretion of the district court, exhaustion in prisoner cases covered by section 1997e(a) is now mandatory.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The PLRA exhaustion requirement requires "proper exhaustion" of all available administrative remedies.  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Moreover, those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524 (citation omitted).  Even where the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.  Id.; Booth v. Churner, 532 U.S. 731, 741 (2001).  Exhaustion is a prerequisite to all inmate lawsuits pertaining to prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.  The obligation to exhaust persists as long as some

1  remedy is available; when that is no longer the case, the prisoner need not further pursue the

2  grievance.  Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).

3          Nonexhaustion under section 1997e(a) is an affirmative defense, and is properly brought in

4  an "unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment."  Wyatt v.

5  Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  In deciding a motion to dismiss for failure to

6  exhaust administrative remedies under section 1997e(a), the court may look beyond the pleadings

7  and decide disputed issues of fact.  Id. at 1119-20.  The particular process by which an inmate

8  exhausts administrative remedies is governed by the prison's own grievance procedures.  Jones v.

9  Bock, 549 U.S. 199, 218 (2007).  If the court concludes that the prisoner has not exhausted the

10  jail's or prison's administrative process, the proper remedy is dismissal without prejudice.  Id.

               **b.**      **state exhaustion requirements**

12          The CDCR provides its inmates the right to appeal administratively "any policy, decision,

13  action, condition, or omission by the department or its staff that the inmate or parolee can

14  demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  Cal.

15  Code Regs. (CCR) tit. 15, § 3084.1(a).  In order to exhaust available administrative remedies

16  within this system, a prisoner must proceed through several levels of appeal: (1) informal

17  resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to

18  the institution head or designee, and (4) third level appeal to the Secretary of the CDCR.  Id.

19  § 3084.7; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  Section 3084.2 requires an

20  inmate to fully describe the problem, list all staff member(s) involved and list all facts known to

21  him regarding the issue at the time of submitting the appeal form.  CCR tit. 15, § 3084.2(a)(3), (4).

22  The appeal must be printed legibly in ink and have only one line of text on each line provided on

23  the form.  Id. at § 3084.2(a)(2).  The third level review exhausts administrative remedies and

24  meets the exhaustion requirement under § 1997e(a).  Id. at § 3084.7(d)(3); Barry, 985 F. Supp. at

25  1237-38.

               **c.**      **analysis**

27          In his opposition, Plaintiff submits evidence in an attempt to show that he exhausted his

9

excessive force claim against Defendant.  However, his effort to do so fails because the totality of the evidence establishes that he never submitted to the PBSP Appeals Office a revised grievance substituting Defendant for Officer Gardner and never submitted to Mr. Townsend the document, submitted as Plaintiff's Exhibit J, requesting that Mr. Townsend grant Plaintiff permission to undertake this substitution.

Mr. Lozano, Mr. Soderlund and Mr. Townsend testify that they searched Plaintiff's records at the PBSP Appeals Office and the CDCR OOA and did not find Plaintiff's Exhibit H, his revised grievance, but did find Plaintiff's original grievance for excessive force against Officer Gardner. This evidence supports the finding that Plaintiff did not submit the revised grievance to either officer.  Further, Mr. Townsend's testimony provides strong evidence that he never received Plaintiff's Exhibit J, requesting that he approve Plaintiff's substitution in his grievance of Defendant for Officer Gardner, never had an interview with Plaintiff about this request and never approved Plaintiff's request.  Tellingly, Mr. Townsend testifies that the written statement on Exhibit J, purporting to be his written approval of the substitution Plaintiff requested, is not in his handwriting.

The finding that Plaintiff never submitted a grievance against Defendant is substantiated by the Third Level Appeal Decision dated August 25, 2011, Defendant's Ex. O.  The first section of the decision, labeled "Appellant's Argument," summarizes the allegations made by Plaintiff regarding his excessive force claim.  The relevant parts of this summary are:

> [Plaintiff] claims that on March 24, 2011, he was assaulted by Pelican Bay State Prison (PBSP) Correctional Officer (CO) Gardner and Coleman.  He claims that he also had some of his personal property thrown away by CO Speaker.  He claims that he saw CO Gardner spit in [his] food. . . . He claims that CO Gardner was holding his left arm and CO Coleman was holding the right arm as he was being escorted.  At this time, CO Gardner kicked the appellant's lower left leg causing him to stumble and then both of the officers slammed the appellant face first on the ground.

Defendant's Ex. J, Third Level Appeal Decision.

Because the "Appellant's Argument Section" merely summarizes the allegations in Plaintiff's grievance, had Plaintiff alleged that Defendant spit in his food, held his left arm and

1    kicked his left leg, Defendant would have been named in the "Appellant's Argument Section"

2    instead of Officer Gardner.  That the decision presents the facts as alleged by Plaintiff in his

3    original grievance is compelling evidence that Plaintiff never submitted a revised grievance with

4    an excessive force claim against Defendant.

5            Thus, notwithstanding the documents submitted by Plaintiff, the Court finds that Plaintiff

6    did not submit a revised grievance alleging that Defendant kicked him and threw him to the

7    ground without cause.  The Court also finds that Plaintiff did not submit Exhibit J to Mr.

8    Townsend for permission to substitute in his grievance Defendant for Officer Gardner.  In order

9    properly to exhaust administrative remedies, Plaintiff was required to list in his grievance the

10   name of the officer who was involved in the issue under appeal.  CCR tit. 15, § 3084.2(a)(3);

11   Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (a prison's own grievance process, not the

12   PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement).

13   Because Plaintiff never submitted a grievance alleging excessive force against Defendant, Plaintiff

14   failed to exhaust available remedies for his instant excessive force claim against him.

15           Accordingly, Defendant's motion to dismiss for lack of exhaustion is GRANTED;

16   Plaintiff's claim is dismissed without prejudice to re-filing in another action when it is exhausted.

17           Although the Court need not address Defendant's second argument for dismissal based on

18   the favorable termination requirement, it does so below and concludes that this requirement is

19   inapplicable under the circumstances.

20                   **2.       Favorable-Termination Requirement**

21           The favorable termination rule in Heck v. Humphrey, 512 U.S. 477 (1994), bars a damages

22   claim for unconstitutional imprisonment until the underlying erroneous decision is set aside.  In

23   order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other

24   harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a

25   section 1983 plaintiff must prove that the conviction or sentence or decision has been reversed on

26   direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make

27   such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

28

United States District Court
Northern District of California

1    <u>Heck</u>, 512 U.S. at 486-87.  Normally, <u>Heck</u> bars a claim of unconstitutional deprivation of time

2    credits because such a claim necessarily calls into question the lawfulness of the plaintiff's

3    continuing confinement, i.e., it implicates the duration of the plaintiff's sentence.  <u>Sheldon v.</u>

4    <u>Hundley</u>, 83 F.3d 231, 233 (8th Cir. 1996).  <u>Heck</u> also bars a claim for using the wrong procedures

5    in a disciplinary hearing that has resulted in the deprivation of time credits if the nature of the

6    challenge to the procedures necessarily implies the invalidity of the judgment.  <u>Edwards v.</u>

7    <u>Balisok</u>, 520 U.S. 641, 645 (1997).  However, the rationale of <u>Heck</u> does not apply to prisoner

8    civil rights actions challenging a disciplinary hearing or administrative sanctions that do not affect

9    the overall length of the prisoner's confinement.  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 857-58 (9th

10   Cir. 2003).  But where a claim would, if successful, necessarily accelerate the prisoner's release,

11   <u>Heck</u> applies.  <u>Id.</u> at 858-59.

12          When a state prisoner seeks damages in a section 1983 suit, the district court must

13   therefore consider whether a judgment in favor of the plaintiff would necessarily imply the

14   invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the

15   plaintiff can demonstrate that the conviction or sentence has already been invalidated.  <u>Heck</u>, 512

16   U.S. at 487.

17          Defendant, citing <u>Smith v. City of Hemet</u>, 394 F.3d 689, 695 (9th Cir. 2005), argues that

18   Plaintiff's suit is barred by <u>Heck</u> because "if a criminal conviction arising out of the same facts

19   stands and is fundamentally inconsistent with the unlawful behavior for which section 1983

20   damages are sought, the 1983 action must be dismissed."  Defendant is correct that the facts upon

21   which Plaintiff's rules violation guilty finding was based are fundamentally inconsistent with

22   Plaintiff's allegations in his complaint and that, if Plaintiff prevailed on his section 1983 claim, the

23   guilty finding would be called into question.  However, for a section 1983 suit to be barred by

24   <u>Heck</u>, the claim, if successful, must necessarily accelerate the prisoner's release.  <u>See</u> <u>Ramirez</u>,

25   334 F.3d at 857-58.  Plaintiff was sentenced to an indeterminate term of seventy-five years to life

26   in prison, with the possibility of parole after eighty-seven years.  RJN, Ex. B.  Plaintiff was thirty

27   years old at the time he was sentenced.  <u>Id.</u>  His sentence, therefore, is equivalent to that of life in

28

United States District Court
Northern District of California

12

prison.  Thus, any loss of good time credits would not necessarily accelerate Plaintiff's release from prison.

In <u>Thomas v. Wong</u>, 2010 WL 1233909 (N.D. Cal. Mar. 26, 2010), the court addressed a situation where the habeas petitioner was serving a sentence of fifteen years to life, but had long passed his minimum eligible parole date (MEPD).  <u>Id.</u> at *1.  The petitioner was found guilty of a rules violation and suffered the loss of thirty days of good time credits.  As a result, his MEPD was recalculated from October 31, 1992 to December 4, 1992.  <u>Id.</u>  The petitioner filed a habeas action challenging the finding of guilt in the discipline hearing; the respondent argued that habeas jurisdiction was lacking because the claim did not challenge the fact or duration of confinement. The court agreed with the respondent.  The court noted that, if the petitioner was in prison on a term of years, the forfeiture of thirty days of good time credits would inevitably affect the duration of his confinement.  <u>Id.</u> at *3.  However, it found that, under the circumstances of the petitioner's sentence, the time credit forfeiture did not "inevitably affect the duration of confinement for this indeterminate-sentenced inmate who is long past his minimum parole date."  <u>Id.</u> at *4.  The court concluded that habeas jurisdiction was absent and dismissed the petition.  <u>Id.</u>; <u>see</u> <u>also</u> <u>Roman v. Knowles</u>, 2010 WL 3741012, *12 (C.D. Cal. June 20, 2011) (although plaintiff suffered forfeiture of good time credits, as a life term prisoner the loss of credits would have no effect on his maximum sentence, thus <u>Heck</u> did not bar his due process claim).

Similarly, given Plaintiff's sentence, where he is eligible for parole only after serving eighty-seven years in prison, the success of his civil rights suit, even if it resulted in the restoration of 150 days of good time credits, would not necessarily affect the duration of his confinement.

Therefore, the Court finds that Plaintiff's civil rights suit is not barred by <u>Heck</u>. Defendant's motion to dismiss on this ground is DENIED.

Because Defendant's motion to dismiss for failure to exhaust administrative remedies is granted, his motion for summary judgment is denied as moot.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  As indicated

above, Plaintiff's claim is dismissed without prejudice.  Defendant's motion for summary

judgment is denied as moot.

   The Clerk shall enter judgment and close the file.

   This order terminates Docket No. 11.

   **IT IS SO ORDERED**.

Dated: September 23, 2013

_____
               JON S. TIGAR
        United States District Judge